UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IXIO NUNEZ,

       Petitioner,

-vs-                                      Case No.  8:09-CV-2029-T-27TBM

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.
_____/

## ORDER

    Petitioner, an inmate in a Florida penal institution proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("petition") (Dkt. 1) with supporting exhibits (Dkts. 1-2 - 1-8) challenging his 2005 revocation of probation entered in Hillsborough County, Florida, for which he was sentenced to 30 years imprisonment.  Subsequently, Petitioner filed a "Supplemental Petition" in which he raised two additional claims for relief (Dkt. 9).  Respondent filed a response to the petition and "Supplemental Petition" (Dkt. 10) with supporting exhibits (Dkt. 11).  Petitioner filed a reply to the response (Dkt. 14) with supporting exhibits (Dkt. 15).

    Respondent asserts no challenge to the petition's timeliness.  The matter is now before the Court for consideration of Petitioner's claims.  An evidentiary hearing is not required for the disposition of this matter.  Rules Governing Section 2254 Cases, Rule 8(a) (2012).

### PROCEDURAL HISTORY

    On December 15, 1999, Petitioner pled guilty to one count of attempted robbery and two counts of robbery (Respondent's Ex. 2 at record p. 90).  Petitioner was sentenced to 30 years

imprisonment, suspended after 5 years, followed by 10 years probation (Id.).

On April 26, 2005, Petitioner admitted violating the conditions of his probation by testing positive for marijuana and cocaine (Respondent's Ex. 4 at record pp. 132-34). Petitioner's probation was revoked, and he was sentenced to 30 years imprisonment (Id. at 136). Petitioner did not file a direct appeal.

On May 14, 2006, Petitioner filed a *pro se* Motion for Postconviction Relief pursuant to Florida Rules of Criminal Procedure, Rule 3.850 ("Rule 3.850 motion") in which he raised four claims of ineffective assistance of counsel (Respondent's Ex. 1). On June 5, 2007, the state post conviction court denied ground three and a portion of ground four of the Rule 3.850 motion, and directed the State to respond to the remaining claims (Respondent's Ex. 2). After the State submitted its response (Respondent's Ex. 3), the post conviction court held an evidentiary hearing on the remaining claims on September 26, 2007 (Respondent's Ex. 5). Following the evidentiary hearing, the post conviction court denied the remaining claims on February 13, 2008 (Respondent's Ex. 6). On August 14, 2009, the appellate court affirmed the post conviction court's denial of Petitioner's Rule 3.850 motion (Respondent's Ex. 11); *Nunez v. State*, 17 So. 3d 1232 (Fla. 2d DCA 2009) [table]. The appellate court mandate issued on October 9, 2009 (Id.).

Petitioner filed his § 2254 petition in this Court on October 2, 2009 (Dkt. 1).[1] The petition raised the following four grounds for relief:

Ground One

Counsel was ineffective in failing to call a witness, Petitioner's probation officer, to

---

[1]Although the petition was received by this Court on October 5, 2009, it appears that Petitioner delivered the petition to prison officials for mailing on October 2, 2009 (Dkt. 1 at 14). Under the mailbox rule set out in *Houston v. Lack*, 487 U.S. 266 (1988), a document is deemed filed by a *pro se* prisoner when it is delivered to prison authorities for forwarding to the court.

testify at the violation of probation hearing that the drug testing method used to allege that Petitioner violated his probation was unreliable.

Ground Two

Counsel was ineffective in misadvising Petitioner that the trial court would impose a lenient sentence in exchange for Petitioner admitting that he violated his probation.

Ground Three

Counsel was ineffective in failing to move for a continuance of the violation of probation hearing on the ground that Petitioner "was sedated due to psychotropic medications."

Ground Four

Counsel was ineffective in failing to "suppress arresting charges which were dismissed and failure to suppress urinalysis results which were never submitted to lab for chemical testing."

The "Supplemental Petition" raised the following two grounds for relief:

"Supplemental" Ground One

Counsel was ineffective in failing to "discuss with [Petitioner] 'advisability' of admitting versus challenging allegations of a presumed dirty urinalysis (drug test) outside of conclusive lab results, particularly when challenging allegations was in [Petitioner's] best interest."

"Supplemental" Ground Two

The prosecutor engaged in prosecutorial misconduct, violating Petitioner's due process rights, by obtaining a "wrongful and illegal conviction" for attempted robbery, which "is not [a] chargeable offense/crime" under Florida Statute, 813.12(1), (2)(a), thereby rendering Petitioner's entire guilty plea invalid.

## STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), this Court's review of the state court's factual findings is highly

deferential. Those findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). It is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

**Ineffective Assistance of Counsel**

To have a facially valid claim alleging ineffective assistance of counsel, Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component. *Id.* at 697.

**Procedural Default**

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")

(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364 (1995) ("[E]xhaustion of state remedies requires that the state prisoner 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]'") (citation omitted).

Under the procedural default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson*, 353 F.3d at 891 (quoting *Judd v. Haley*, 250 F.3d at 1313).

Pre-AEDPA decisions from the Supreme Court establish the framework governing procedural default in federal habeas cases. A procedural default will only be excused in two narrow circumstances. First, Petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires Petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).

To show "prejudice," Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Petitioner must show that

there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892.

Second, Petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining "given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

## DISCUSSION

### Ground Three[2]

Petitioner complains that counsel was ineffective in failing to move for a continuance of the violation of probation hearing on the ground that Petitioner "was sedated due to psychotropic

---

[2]From an organizational standpoint, the Court will address Ground Three first because the claim challenges the knowing and voluntary nature of Petitioner's plea admitting to a violation of the terms of his probation. A voluntary and intelligent plea forecloses federal collateral review of alleged constitutional errors preceding the entry of the plea, including claims of ineffective assistance of counsel that do not implicate the validity of the plea. *See Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992); *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). Therefore, if Petitioner's plea was knowing and voluntary, he waived all non-jurisdictional challenges to the revocation of his probation and sentence.

6

medications." In his reply, Petitioner further contends that his psychotropic medications rendered him incompetent to enter a voluntary plea (Dkt. 14 at p. 7). In his state Rule 3.850 motion, Petitioner alleged, in pertinent part, that "counsel was fully aware of the fact that Defendant was sedated during proceeds as he was prescribed Zoloft and Seroquel on 4-05-04. Therefore[,] his sedation was evident on 4-26-05 as plea was entered." (Respondent's Ex. 1 at record p. 24). He further alleged that his plea was involuntary because of his "heavy dosages of psychological medications," and because he was "psychologically and emotionally unstable." (Id. at record p. 22).

In denying this claim, the state post conviction court stated:

> Defendant argues further that his plea was involuntary and that counsel was ineffective in advising him to enter a plea when counsel knew Defendant was on heavy dosages of psychotropic medication. However, where the trial court sufficiently inquires about the use and effects of the medication, and where the defendant appears lucid, the defendant's affirmations that his medication did not affect the knowing and voluntary nature of his plea will refute a claim that he entered his plea involuntarily. *Davis v. State*, 938 So. 2d 555, 557 (Fla. 1st DCA 2006). Here, the trial court inquired about Defendant's use of medication and the effects of the medication on his ability to understand his plea. Defendant denied any ill effects and appeared lucid. (See Transcript, April 26, 2005, pp. 5 — 7, attached). As such, Defendant's claim regarding the effects of his medication on his ability to enter a knowing and voluntary plea is conclusively refuted by the record. Therefore, Defendant is not entitled to relief on ground three.

(Respondent's Ex. 2 at record pp. 93-94).

"Treatment with anti-psychotic drugs does not *per se* render a defendant incompetent to stand trial." *Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992) (citing *Price v. Wainwright*, 759 F.2d 1549, 1555 (11th Cir. 1985)). The clearly established federal law on a

defendant's competency to stand trial[3] is set forth in *Drope v. Missouri*, 420 U.S. 162 (1975);

*Pate v. Robinson*, 383 U.S. 375 (1966), and *Dusky v. United States*, 362 U.S. 402 (1960). *Dusky*

provides that the standard for mental competency to stand trial is "whether [a defendant] has

sufficient present ability to consult with his lawyer with a reasonable degree of rational

understanding - - and whether he has a rational as well as factual understanding of the

proceedings against him." *Dusky v. United States*, 362 U.S. at 402.

> The burden on the petitioner seeking federal habeas relief on the grounds of
> incompetency is heavy. The standard is: "[c]ourts in habeas corpus proceedings
> should not consider claims of mental incompetence to stand trial where the facts
> are not sufficient to positively, unequivocally, and clearly generate a real,
> substantial, and legitimate doubt as to the mental capacity of the petitioner." *Reese
> v. Wainwright*, 600 F.2d 1085, 1091 (5th Cir. 1979) (citing *Bruce v. Estelle*, 483
> F.2d 1031, 1043 (5th Cir. 1973), *subsequent opinion*, 536 F.2d 1051 (5th Cir.
> 1976)), *cert. denied*, 444 U.S. 983, 100 S. Ct. 487, 62 L. Ed. 2d 410 (1979).

*Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992).[4] Under *Drope* and *Pate*, if a

defendant fails to request that the trial court conduct an inquiry into his competency to stand trial,

a trial court violates the Due Process Clause by failing to conduct such an inquiry if the objective

facts known to the court at the time create a *bona fide* doubt as to mental competency. *Drope v.

Missouri*, 420 U.S. at 180; *Pate v. Robinson*, 383 U.S. at 385; *Medina v. Singletary*, 59 F.3d

1095 (11th Cir. 1995).

---

[3]The competency standard for pleading guilty is the same as the competency standard for standing trial.
*Godinez v. Moran*, 509 U.S. 389 (1993); *Stinson v. Wainwright*, 710 F.2d 743, 745 (11th Cir. 1983); *Malinauskas v.
United States*, 505 F.2d 649, 654 (5th Cir. 1974).

[4]In *Sheley*, the court rejected the petitioner's claim that his ingestion of psychotropic drugs before he
entered his guilty plea in state court rendered the plea involuntary. *Id.*, 955 F.2d at 1437-39. "[A] '[petitioner] must
present evidence demonstrating that the dosage [of anti-psychotic medication] given him affected him sufficiently
adversely as to raise a doubt of his ability to consult with his lawyer and to have a rational understanding of the
proceedings against him.'" *Id.*, 955 F.2d at 1438-39 (quoting *Fallada v. Dugger*, 819 F.2d 1564, 1569 (11th Cir.
1987)). The court found that Sheley failed to present sufficient evidence to support his claim that his "medication
caused him to be confused and to lack understanding of the proceedings under the legal standard of competence."
*Id.*, 955 F.2d at 1439.

During the plea colloquy, Petitioner admitted that he was taking psychotropic medications (Respondent's Ex. 4 at record p. 134). Notwithstanding, Petitioner assured the state court that the medications did not effect his ability to understand what he was doing, and that he understood by admitting the violation of probation that he was waiving his rights to a hearing, to call and confront witnesses, to testify on his own behalf, and to an appeal (Id. at pp. 133-34). Petitioner further averred that he was admitting the violation because he had in fact committed the violation (Id. at p. 133). Finally, he stated that no one had threatened or coerced him into admitting the violation (Id).

The state post conviction court made a finding that Petitioner's plea was knowing and voluntary, and a review of the plea colloquy supports that finding. The trial court observed Petitioner's demeanor, coherence and ability to communicate with the court during the plea colloquy. Nothing in the transcript of the violation of probation hearing indicates that Petitioner lacked a sufficient understanding of the proceedings.

"[T]he representations of the defendant [at the violation of probation hearing], as well as any findings by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Petitioner's bare allegation that he was under the influence of psychotropic medication when he admitted to the violation of probation is insufficient to sustain his claims of an involuntary plea and ineffective assistance of counsel. Petitioner has failed to cite any objective facts that would positively, unequivocally and clearly

9

generate a legitimate doubt as to his competency during the plea hearing. *Sheley v. Singletary*, 955 F.2d at 1438. Further, he has failed to show that any medication or mental illness affected him at the violation of probation hearing to the point that he could not understand the proceedings or effectively consult with counsel. *Dusky v. United States*, 362 U.S. at 402.

Likewise, Petitioner has failed to show that counsel saw or knew something on the day of the plea that would cause her concern about Petitioner's competency or ability to understand the events transpiring. Therefore, Petitioner has failed to show deficient performance by counsel.

Petitioner has failed to rebut the presumption of correctness afforded the state court's factual findings. Consequently, Petitioner has failed to meet his burden of proving that the state court's decision was contrary to clearly established Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See 28 U.S.C. § 2254(d)(1), (2). Accordingly, Ground Three warrants no federal habeas corpus relief.

**Ground One**

In Ground One, Petitioner complains that counsel was ineffective in failing to depose and call Petitioner's probation officer to testify at the violation of probation hearing that the drug testing method used to allege that Petitioner violated his probation was unreliable. In his Rule 3.850 motion, Petitioner asserted, in pertinent part, that counsel should have called Petitioner's probation officer, Robert Norton, to testify that the "field test" he had administered to Petitioner, which tested positive for illegal drugs, was unreliable because "it had not gone through the chain of command nor was it witnessed or verified by another officer." (Respondent's Ex. 1 at record pp. 18-19). Petitioner speculated that had Norton testified, "in all likelihood [sic] [the result of

10

the "field test"] would have been inadmissable," and Petitioner would have been "reinstated on

probation as opposed to a commitment of thirty years on a first time violation." (Id. at 19).

In denying the claim, the state post conviction court stated:

> In ground one, Defendant alleges ineffective assistance of counsel for failure to investigate or depose an available witness. Specially, Defendant contends that counsel failed to locate or question Robert Norton, Defendant's probation officer, who was available, and whose testimony would have demonstrated that the drug testing method used to allege that Defendant violated probation was unreliable. Defendant argues that the field testing method used to allege that Defendant violated probation was inadmissible and unreliable because the chain of custody could not be verified and lab testing was never conducted. Had counsel investigated or deposed Norton, Defendant argues, counsel could have successfully challenged the violation of probation affidavit. At the evidentiary hearing, counsel testified that, as Defendant did not want a violation of probation hearing but instead wanted to admit to the positive drug screen, she did not investigate Robert Norton as a potential witness. The Court finds counsel's testimony credible and finds that counsel will not be deemed ineffective for honoring her client wishes. *See Waterhouse v. State*, 792 So.2d 1176, 1183 (Fla. 2001) (holding that counsel was not ineffective for failing to present certain mitigation evidence when the client instructed him not to pursue that evidence); *Sims v. State*, 602 So.2d 1253, 1257-58 (Fla. 1992). ("[W]e do not believe counsel can be considered ineffective for honoring the client's wishes.") As such, Defendant is not entitled to relief on ground one.

(Respondent's Ex. 6 at record page 145).

First, the alleged ineffective assistance in this claim occurred prior to the time Petitioner

entered his knowing and voluntary plea, and does not relate to whether the plea was knowing and

voluntary. Therefore, this claim was waived. *See Tollett*, 411 U.S. at 267.

Second, even if the claim hadn't been waived by the plea, the claim would still fail.

"Complaints of uncalled witnesses are not favored, because the presentation of testimonial

evidence is a matter of trial strategy and because allegations of what a witness would have

testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)

(citations omitted). Further, "evidence about the testimony of a putative witness must generally

be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Hence, the "petitioner must first make a sufficient factual showing, substantiating the proposed witness testimony." *Percival v. Marshall*, 1996 WL 107279 at *3 (N.D. Cal. March 7, 1996), *affirmed*, 106 F.3d 408 (9th Cir. 1997). "Such evidence might be sworn affidavits or depositions from the potential witnesses stating to what they would have testified." *Id.*

Petitioner has failed to present evidence of actual testimony or any affidavit from Norton. Therefore, Petitioner only speculates on Norton's proposed testimony and presents no evidence showing that he would have testified as Petitioner hypothesizes.

Finally, during the Rule 3.850 evidentiary hearing, Petitioner's trial counsel testified that she did not depose Norton because his violation of probation affidavit indicated that Petitioner admitted to him that he had used drugs (Respondent's Ex. 5 at record p. 168). Therefore, trial counsel was concerned that if she took Norton's deposition, Norton "would then give me more information about the circumstances of Mr. Nunez admitting to him that he had used the marijuana and cocaine." (Id. at p. 169).

Petitioner has failed to demonstrate that counsel's performance fell outside the bounds of reasonable professional judgment. Further, Petitioner has failed to present evidence supporting his speculative contention that Norton's proposed testimony would have resulted in his continued placement on probation. Therefore, Petitioner has failed to meet either *Strickland's* deficient performance requirement or prejudice requirement. *Strickland*, 466 U.S. at 691-92.

The state court's denial of this claim was neither an unreasonable application of *Strickland*, nor based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, Ground One warrants no federal habeas corpus relief.

**Ground Two**

Petitioner contends that counsel was ineffective in misadvising him that the trial court would impose a lenient sentence in exchange for Petitioner admitting that he violated his probation. In his Rule 3.850 motion, Petitioner alleged, in pertinent part, that he admitted to the violation of probation because counsel told him that if he admitted to the violation, the court would be "lenient" during sentencing and reinstate his probation since it was the first time he had violated the conditions of his probation (Dkt. 1-3 at docket p. 9). Finally, Petitioner alleged that counsel never explained to him "that an open plea subjected Defendant to receive a 30 year sentence." (Id. at docket p. 10).

In denying this claim, the state post conviction court stated:

> In ground two, Defendant alleges ineffective assistance of counsel for misadvising Defendant that the trial court would impose a lenient sentence. Specially, Defendant contends that counsel told him that, if he did not challenge the alleged violation, the court would reinstate Defendant's probation because it was his first violation of probation. Defendant argues further that counsel never explained to him that an open plea exposed him to a thirty (30) year sentence. At the evidentiary hearing, counsel testified that her notes indicate that she advised Defendant of the statutory maximum and that he would likely receive the previously imposed thirty (30) year suspended sentence. (See Transcript, September 26, 2007, pp. 22 - 25, attached). The Court finds counsel's testimony credible and finds that it conclusively refutes Defendant's allegation. As such, Defendant is not entitled to relief on ground two.

(Respondent's Ex. 6 at record page 145-46).

The post conviction court found counsel's testimony to be credible. As a consequence,

13

the court concluded that counsel was not ineffective because she: 1) did not advise Petitioner that

if he pleaded guilty to the violation of probation, the court would impose a lenient sentence; and

2) did advise Petitioner that he could and likely would receive a 30 year sentence.

Pursuant to 28 U.S.C. § 2254(e)(1), a determination of a factual issue made by a state

court shall be presumed to be correct and the petitioner has the burden of rebutting the

presumption of correctness by clear and convincing evidence. The federal courts are in accord

with the principle that the fact-finder's credibility determinations are not to be disturbed. Even

where there is some conflict in the evidence, credibility determinations are within the province of

the fact-finder. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985) (holding that

special deference is due where a trial court's findings are based on the credibility of witnesses,

"for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so

heavily on the listener's understanding of and belief in what is said"); *Inwood Lab., Inc. v. Ives

Lab., Inc.*, 456 U.S. 844, 856 (1982) (holding that "[d]etermining the weight and credibility of

the evidence is the special province of the trier of fact."); *United States v. Pineiro*, 389 F.3d

1359, 1366 (11th Cir.2004) (holding that "[s]uch a credibility finding is within the province of

the factfinder").

Here, the state court's credibility and factual findings are supported by the record. During

the post conviction evidentiary hearing, trial counsel testified, in pertinent part, that she "made it

a point to make sure that every client knew that they could in fact get the maximum. . . ."

(Respondent's Ex. 5 at record p. 170).  Although she did not specifically recall what she said to

Petitioner, she testified that she "likely advised him. . .that if he did in fact admit [to the violation

of probation], that that may have some weight as far as playing a role in mitigation. . . ." (Id.).

She further testified that she did not believe that she would have advised Petitioner that the "trial court would impose a lenient sentence[,]" in part because she had "seen Judge Perry on first violations impose the maximum sentence before." (Id.). Further, and most importantly, counsel testified that her notes indicated that Petitioner "knows the maximum, and that the 30 year suspended sentence is likely to be imposed." (Id.). Moreover, Petitioner testified during the evidentiary hearing that he believed that the maximum sentence was thirty years (Id. at record p. 178). Further, although Petitioner testified that counsel "sounded very positive" that the court would be lenient when sentencing Petitioner, he admitted that counsel could not promise him that the court would be lenient (Id. at record p. 184). Finally, during Petitioner's plea hearing, he admitted that no one had promised him anything to get him to plead guilty (Respondent's Ex. 4 at record p. 133).[5]

Petitioner has failed to meet his burden under *Strickland* to demonstrate deficient performance by counsel. Petitioner has not presented any basis for rejecting the state court's credibility and factual determinations. Moreover, even if counsel "sounded very positive" that the court would show Petitioner leniency if he admitted to the violation of probation, "[g]enerally, counsel's erroneous predictions or estimates do not rise to the level of deficient performance or render a plea involuntary." *Krecht v. United States*, 846 F.Supp.2d 1268, 1281 (S.D. Fla. 2012). *See also Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) ("misinformation from a defendant's attorney, such as an incorrect estimate of the offense severity rating, standing alone, does not constitute ineffective assistance of counsel"); *United*

---

[5]The Court notes that in Petitioner's reply, Petitioner asserts in pertinent part that his "only known choice was to plea [sic] guilty and pray for the leniency counsel informed him the court *might have* as opposed to pursuing a hearing." (Dkt. 14 at p. 9) (emphasis added). This assertion further supports the state post conviction court's factual finding that counsel did not tell Petitioner that if he admitted to the violation of probation, the trial court would impose a lenient sentence.

*States v. Sweeney*, 878 F.2d 68, 69, 70 (2nd Cir. 1989) (counsel's "erroneous estimate" of

guideline sentencing range not ineffective assistance); *Martin v. McDonough*, 2006 U.S. Dist.

LEXIS 54176, *20 (M.D. Fla. Aug. 4, 2006) (unpublished) ("[T]rial counsel's failure to

accurately predict the sentence which the trial court will impose is not deficient performance.")

(citations omitted).

Petitioner has not shown that the state court's resolution of this claim was an

unreasonable application of *Strickland*, or that the denial of relief was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceedings.

Accordingly, Petitioner is not entitled to habeas relief on Ground Two.

**Ground Four**

Petitioner complains that counsel was ineffective in failing to "suppress arresting charges

which were dismissed and failure to suppress urinalysis results which were never submitted to

lab for chemical testing." In Ground 1, Issue (D) of his Rule 3.850 motion, Petitioner alleged

that counsel was ineffective in failing to move to strike: 1) the allegations of new crimes on the

violation of probation affidavit on the ground that the State never filed charges on those crimes;

and 2) the results of the initial urine drug test on the ground that the sample was never sent to a

lab for further, conclusive testing (Respondent's Ex. 1 at record pp. 25-26).

In summarily denying the first part of Ground 1, Issue (D), the state post conviction court

stated:

> In ground four, Defendant alleges ineffective assistance of counsel for
> failure to have the allegations stricken from Defendant's violation of probation
> affidavit. Specifically, Defendant contends that counsel should have moved to
> have the allegations of new crimes on the violation of probation affidavit stricken
> because the State did not file charges on those crimes. However, the Court notes
> that the trial court did not find Defendant in violation of his probation based on

16

new substantive charges. Rather, the Court found Defendant violated his probation for testing positive for marijuana and cocaine. (See Transcript, April 26, 2005, attached). As such, the Court finds Defendant has failed to demonstrate how he was prejudiced by counsel's alleged deficiency. Therefore, Defendant is not entitled to relief on this portion of ground four.

(Respondent's Ex. 2 at record p. 94).

Following the evidentiary hearing, the state post conviction court denied the second part

of Ground 1, Issue (D), stating:

In ground four, Defendant alleges that counsel should have moved to suppress the urine test results because the sample was never sent to a lab for conclusive results. Specifically, Defendant contends that, because counsel knew the only evidence of Defendant's alleged violation was an inadmissible urine test, counsel should have challenged the violation of probation affidavit. At the evidentiary hearing, counsel testified that, because Defendant did not want to have a violation of probation hearing but instead wanted to admit to the positive drug screen, she did not pursue a motion to suppress. (See Transcript, September 26, 2007, pp. 25 — 26, attached). The Court finds counsel's testimony credible and finds that counsel will not be deemed ineffective for honoring her client's wishes. *See Waterhouse*, 792 So. 2d at 1183; *Sims*, 602 So. 2d at 1257-58. As such, Defendant is not entitled to relief on ground four.

(Respondent's Ex. 6 at record p. 146).

First, as in Ground One, *supra*, the alleged ineffective assistance in this claim occurred

prior to the time Petitioner entered his knowing and voluntary plea. His claim that counsel was

ineffective in failing to move to strike the allegations of new crimes and the results of the urine

drug test in no way implicates the validity of Petitioner's plea, because Petitioner was aware of

counsel's failure to move to strike these alleged violations of the terms of probation prior to

entering his plea. Counsel's alleged error, therefore, does not impact the knowing and intelligent

nature of Petitioner's plea, and cannot provide a basis to overturn the revocation of Petitioner's

probation, because Petitioner waived the issue.

Second, even if not waived, this claim fails because Petitioner has failed to demonstrate

either deficient performance or prejudice. Although counsel could have challenged the allegations of new crimes and the results of the urine drug test, the failure to do so in Petitioner's case does not establish deficient performance. *Cf. Burger v. Kemp*, 483 U.S. 776, 794 (1987) ("The record at the habeas corpus hearing does suggest that [counsel] could well have made a more thorough investigation than he did. Nevertheless, in considering claims of ineffective assistance of counsel, '[w]e address not what is prudent or appropriate, but only what is constitutionally compelled.'") (citations omitted).

Given that Petitioner told counsel that he "was admitting to the parole violation (the positive drug test)" (Respondent's Ex. 5 at record p. 178), and "did not want to proceed to a hearing" (Id. at record p. 153), counsel's strategy to advise Petitioner to admit to the violation and pursue mitigation (Id. at record p. 167) was constitutionally adequate, although she admittedly would have considered challenging the initial drug test result had Petitioner chosen to fight the allegations that he violated his probation (Id. at record pp. 172-73). *See Mulligan v. Kemp*, 771 F.2d 1436, 1441 (11th Cir. 1985) ("Because we recognize that a defendant must have this broad power to dictate the manner in which he is tried, it follows that, in evaluating strategic choices of trial counsel, we must give great deference to choices which are made under the explicit direction of the client."); *Stevens v. Del. Corr. Ctr.*, 295 F.3d 361, 373 (3d Cir. 2002) ("it is reasonable and proper for counsel to make strategic choices about both trial strategy and pre-trial investigation in light of information supplied by a client") (citing *Strickland*, 466 U.S. at 691).

Moreover, it is apparent from counsel's testimony during the evidentiary hearing that she believed, based on her prior experiences in front of the judge who was presiding over Petitioner's

case, admitting to the violation of probation represented Petitioner's best chance to receive a lenient sentence, because if Petitioner did not admit the violation at the "first court date," the judge would set the matter for a hearing, and "all negotiations would be off." (Respondent's Ex. 5 at record p. 158-59).[6]  *See Tollett*, 411 U.S. at 268 ("the expectation or hope of a lesser sentence. . .might well suggest the advisability of a guilty plea. . .").

With regard to prejudice, the two-prong *Strickland* test applies to guilty plea challenges, although the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Petitioner has failed to show prejudice because he has failed to show that but for counsel's failure to move to strike the allegations of new crimes and the results of the field drug test, he would not have admitted to the violation of probation and would have insisted on proceeding to a hearing.

Petitioner's self-serving claim that he would have proceeded to a hearing had counsel filed a motion to strike does not suffice to meet his burden to show prejudice. A mere allegation by the defendant that he would have insisted on going to trial, although required, is insufficient to establish prejudice. *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) (defendant's mere allegation that he would have insisted on trial but for counsel's errors, although necessary, is ultimately insufficient to entitle him to relief on an ineffective assistance claim; rather, the

---

[6]Counsel testified that "[w]hat I would typically advise people is if they admitted and allowed [Judge Perry] to sentence them prior to a hearing, that typically if they had any chance of a more lenient sentence, that that would be to their benefit ultimately." (Id. at record p. 159).

19

Court looks to factual circumstances surrounding the plea to determine whether the defendant would have proceeded to trial); *United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir. 1990) ("A mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice.") (citation omitted).  In light of Petitioner's admission to both counsel and the trial court that he violated the conditions of his probation by testing positive for marijuana and cocaine, and given Petitioner's "belief. . .that by admitting to the violations, that the Court was going to be lenient. . ." (Respondent's Ex. 5 at record p. 180), Petitioner fails to demonstrate prejudice, i.e. that he would have insisted on a hearing had counsel filed a motion to strike. *See Beck v. Angelone*, 261 F.3d 377, 396 (4th Cir. 2001) (finding that in light of overwhelming evidence of guilt and lack of available defenses, petitioner could not establish prejudice under the modified "reasonable probability" standard).

Petitioner has failed to meet his burden of proving that the state court's denial of this claim of ineffective assistance was an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts.  Accordingly, Ground Four warrants no federal habeas corpus relief.

**"Supplemental" Ground One**[7]

It is unclear what claim Petitioner is attempting to assert in Supplemental Ground One. However, it appears Petitioner is asserting that counsel was ineffective in failing to advise him what the best course of action was, i.e., whether it was best to admit violating his probation in hopes of gaining a more lenient sentence, or proceed to a hearing and challenge the results of the drug test.

_____

[7] See Dkt. 9 at docket p. 4.

20

First, this claim is unexhausted because Petitioner never presented it to the state courts (See Respondent's Exs. 1, 8).  It would be futile to dismiss this case to give Petitioner the opportunity to exhaust this claim in state court because he could have and should have exhausted the claim by raising it in his Rule 3.850 motion.[8]  *See Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993) (where a claim has not been exhausted in state courts but would be barred if presented there, a federal court may bar the claim by relying upon the applicable state rules, since exhaustion would be futile). Accordingly, this claim is procedurally defaulted.

Petitioner has not shown either cause excusing the default or actual prejudice resulting from the bar. Further, he has not shown that he is entitled to the fundamental miscarriage of justice exception.

Second, even if this claim was not procedurally defaulted, it would fail on the merits because Petitioner has failed to show deficient performance by counsel.  When a defendant pleads guilty, counsel need only provide his client with an understanding of the law in relation to the facts so that the defendant can make an informed decision between pleading guilty and going to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). Counsel need only make an independent examination of the facts, circumstances, pleadings and applicable law, and then offer counsel's informed opinion to his client as to the best course of action. *Id.*

During the evidentiary hearing on Petitioner's Rule 3.850 motion, the following pertinent exchange occurred between Petitioner and his counsel:

Ms. Dietsch: Did you have any conversations with her - - with Ms. Frederiksen-Cherry with regard to whether or not admitting to being in violation

---

[8]Any further attempt at exhaustion in Florida courts would be futile because his claim would be untimely and procedurally barred under Florida law. Fla. R. Crim. P. 3.850(f); *see Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).

of probation or going to an evidentiary hearing, which would be a better or wiser thing for you to do?

Petitioner: Yes.

Ms. Dietsch: And did she tell you whether it would be better for you to go to an evidentiary hearing or to admit?

Petitioner: To admit.

Ms. Dietsch: And did you have any conversations with her as to why it would be better for you to admit?

Petitioner: Yes. She told me that if I did not challenge any of my violations, probation violations, that the judge would be lenient and would not sentence me to the maximum sentence.

(Respondent's Ex. 5 at record p. 178).

Therefore, according to Petitioner's own testimony, counsel did offer Petitioner her opinion as to the best course of action. While Petitioner may be dissatisfied with the fact that his admitting to the violation of probation did not result in a more lenient sentence, this outcome does not in any way demonstrate that counsel rendered ineffective assistance. *See, e.g., Toliver v. Artus*, 2013 U.S. Dist. LEXIS 886, *24 (W.D.N.Y. Jan. 3, 2013) (unpublished) ("Certainly, Petitioner's dissatisfaction with the outcome of the proceeding is not a valid basis on which to find that defense counsel provided ineffective assistance of counsel.") (citing *United States v. Garguilo*, 324 F.2d 795, 797 (2d Cir. 1963) ("A convicted defendant is a dissatisfied client, and the very fact of his conviction will seem to him proof positive of his counsel's incompetence.").

Finally, in his reply, Petitioner appears to expand this claim by asserting that counsel was ineffective in failing to advise him that the positive field drug test performed by his probation officer was insufficient, without further laboratory testing, to establish that Petitioner had violated his probation (Dkt. 14 at p. 4). Petitioner asserts that because counsel failed to provide

22

him with this information, Petitioner's "only known choice was to plea [sic] guilty and pray for []
leniency. . ." (Id. at p. 9).

Petitioner has failed to demonstrate prejudice as a result of counsel's alleged failure to
inform him that the field drug test was insufficient to establish the violation of probation.  First,
Petitioner's own allegation that he "adamantly requested counsel to speak with and depose. .
.Norton. . .[because he would have testified] that the drug testing method used. . .was an
unreliable field test which is not usable for court admission. . ." (Respondent's Ex. 1 at record p.
18), demonstrates that prior to admitting to the violation of probation, Petitioner knew that he
had the option to proceed to a hearing and challenge the field drug test.  Second, even if counsel
could have challenged the field drug test, Petitioner's admission to his probation officer would
have been sufficient non-hearsay evidence establishing that Petitioner had violated his probation.
See Rothe v. State, 76 So. 3d 1010, 1011 (Fla. 1st DCA 2011) ("Rothe's admissions [to his
community control officer that he had cocaine in his system from handling bags of cocaine]
constitute sufficient non-hearsay evidence of cocaine possession allowing the trial court to
consider and rely on the hearsay [drug] test results.").  Third, in Florida, a probation officer's
testimony about the results of a field drug test is sufficient to support a finding of a violation of
probation where the officer possessed state certification to administer such tests.  Terry v. State,
777 So. 2d 1093, 1094 (Fla. 5th DCA 2001).  Petitioner does not allege that Norton was not
certified to administer the field drug test.

Accordingly, "Supplemental" Ground One  warrants no federal habeas corpus relief.

**"Supplemental" Ground Two[9]**

---

[9]See Dkt. 9 at docket p. 5.

23

Petitioner complains that he was denied due process when the prosecutor used "improper methods to produce a wrongful conviction." Specifically, Petitioner asserts that the prosecutor presented him with a negotiated plea bargain in which Petitioner pleaded guilty to two counts of robbery with a deadly weapon, and one count of attempted robbery under "Fla. Stat., 813.12 (1), (2)(a)" [sic].[10] Petitioner argues that attempted robbery is a non-existent offense under the statute.[11]

First, as Petitioner concedes in his "supplemental" petition (see Dkt. 9 at docket pp. 5-6), this claim is unexhausted because he never presented it to the state courts. It would be futile to dismiss this case to give Petitioner the opportunity to return to state court to attempt to exhaust this claim because the claim could have and should have been raised on direct appeal from the original judgment of conviction. *See Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1989) (where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are considered procedurally barred in federal court). Florida's time limitations for bringing an appeal bar Petitioner's returning to state court to present the claim. See Fla. R. App. P. 9.110(b). Therefore, the claim is procedurally defaulted. *See Bailey v. Nagle*, 172 F.3d at 1305 ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile.") (citation omitted).

---

[10]Presumably, Petitioner intended to cite to Fla. Stat., Sec. 812.13, the statute governing robbery.

[11]The Court notes that this claim appears to challenge the original judgment of conviction, not the judgment revoking Petitioner's probation.

Petitioner has not shown either cause excusing the default[12] or actual prejudice resulting from the bar. Further, he has not alleged or shown that he is entitled to the fundamental miscarriage of justice exception.

Second, even if this claim was not procedurally defaulted, it would fail on the merits. Florida Statutes §§ 812.13(1) and 777.04(1) establish the offense of attempted robbery.[13] Consequently, Petitioner was not convicted of a non-existent crime.

Accordingly, "Supplemental" Ground Two warrants no federal habeas corpus relief.

### Conclusion

For the foregoing reasons, the Court finds that Petitioner is not entitled to federal habeas relief.

ACCORDINGLY, it is **ORDERED** that the Petition for Writ of Habeas Corpus (Dkt. 1) and Supplemental Petition for Writ of Habeas Corpus (Dkt. 9) are **DENIED**. The **Clerk** shall

---

[12]Despite his apparent argument to the contrary (see Dkt. 9 at docket p. 6), Petitioner's *pro se* status does not constitute cause to excuse his procedural default. *See McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992) ("A pro se petitioner is not exempted from the cause and prejudice requirement of *Sykes*. He must still show either that an objective factor external to himself caused him to default his claim, or that the defaulted claim raises an issue that was 'intrinsically beyond [a] pro se petitioner's ability to present.'") (quoting *Harmon v. Barton*, 894 F.2d 1268, 1275 (11th Cir.1990)).

[13] Section 812.13(1) defines robbery as follows:

"Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.

Fla. Stat. § 812.13(1) (1999).

Section 777.04, Florida Statutes, provides, in relevant part:

A person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt, . . .

Fla. Stat. § 777.04(1) (1999).

enter judgment against Petitioner, terminate all pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner cannot make the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** in Tampa, Florida, on *February / 9*, 2013.

JAMES D. WHITTEMORE
United States District Judge

SA:sfc
Copy to: Petitioner *pro se*
            Counsel of Record

26